UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MMOJA AJABU,                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   No. 1:18-cv-01243-JMS-MJD
                                    )
HEATHER HARVEY,                     )
                                    )
            Defendant.              )

# ORDER

This case arises out of an interaction between Heather Harvey, a staffer in the Office of U.S. Representative André Carson, and Mmoja Ajabu, one of Representative Carson's constituents. Mr. Ajabu, proceeding *pro se*, alleges that Ms. Harvey committed battery, defamation, and intentional and negligent infliction of emotion distress. The matter was removed to this Court on the basis of 28 U.S.C. § 1442(a)(4) as a suit against an officer of the House of Representatives. Presently pending before the Court are Ms. Harvey's Motion to Dismiss Mr. Ajabu's Complaint, [Filing No. 4], and Mr. Ajabu's Motion to Remand his case to state court, [Filing No. 7].

## I.
### BACKGROUND

As set forth in Mr. Ajabu's Complaint, on December 19, 2017, Mr. Ajabu engaged in a conversation with Ms. Harvey at an event hosted by the Indianapolis Mayors' Advisory Council for Veterans. [Filing No. 1-1 at 2.] At some point during the conversation, Ms. Harvey touched Mr. Ajabu against his will. [Filing No. 1-1 at 2.]

1

On January 25, 2018, in the course of seeking a protective order against Mr. Ajabu,[1] Mr. Ajabu alleges that Ms. Harvey made a false statement by claiming that Mr. Ajabu had stalked her. [Filing No. 1-1 at 2.]

As a result of the foregoing, on April 3, 2018, Mr. Ajabu filed suit in Marion County Superior Court, claiming that that Ms. Harvey committed: (1) battery, (2) defamation, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. [Filing No. 1-1 at 2-3.] On April 24, 2018, Ms. Harvey removed the matter to this Court. [Filing No. 1.]

On April 27, 2018, Ms. Harvey filed a Motion to Dismiss, [Filing No. 4], and on May 22, 2018, Mr. Ajabu filed a Motion to Remand the case to state court, [Filing No. 7]. Both Motions are now ripe for the Court's review.

## II.
### DISCUSSION

Prior to turning to the merits of Mr. Ajabu's Complaint, the Court must first consider jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

---

[1] Mr. Ajabu does not provide information about the protective order in his Complaint. However, the Court is permitted to look to the documents submitted with Ms. Harvey's Notice of Removal on two bases: (1) they are matters of judicial and public record and Mr. Ajabu has not disputed their authenticity, *see General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F .3d 1074, 1081 (7th Cir. 1997); and (2) "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists," *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quotation and citation omitted).

In her Notice of Removal, Ms. Harvey stated that she is "a federal employee currently serving as the Veterans Caseworker for the Honorable André Carson, U.S. Representative for the seventh congressional district of Indiana" and that removal is appropriate under 28 U.S.C. §1442. [Filing No. 1 at 1 (citing 5 U.S.C. § 2105(a)(1)(B)).] Ms. Harvey alleges that removal of the case was appropriate under § 1442 because: (1) the claims brought against her "allege injuries as a result of actions taken by Ms. Harvey during discharge of her official duties," and (2) she can "raise one or more colorable federal defenses to the claims, including (a) sovereign immunity, and (b) failure to exhaust administrative remedies." [Filing No. 1 at 3-4.]

28 U.S.C. § 1442, commonly known as the "federal officer removal statute," provides that a civil action "that is commenced in a State court" and "that is against or directed to" an officer of the United States "may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a). The Seventh Circuit has stated that the federal officer removal statute allows removal when: "(1) the defendant is a 'person' within the meaning of the statute, (2) the defendant is 'act[ing] under' some entity of the United States, (3) the defendant is acting under color of federal authority, and (4) the defendant has a colorable federal defense." *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 589-90 (7th Cir. 2016) (quoting *Ruppel v. CBS Corp.*, 701 F.3d at 1180-81 (7th Cir. 2012)).

Prior to determining whether removal was proper under § 1442, however, the Court must determine a separate jurisdictional question concerning Mr. Ajabu's claims. In 1922, the Supreme Court described the principle that has since become known as "derivative jurisdiction," stating that where a state court "was without jurisdiction," the district court "could not acquire jurisdiction over them by the removal" because the "jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377,

3

382 (1922). Therefore, under the doctrine of derivative jurisdiction, where "the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Id.*

In determining whether this Court's jurisdiction is affected by derivative jurisdiction, the parties' briefs are of limited assistance to the Court, as they do not discuss the issue. However, peppered throughout the briefs are relevant arguments and discussions which the Court will consider, where appropriate.

### A. The Federal Tort Claims Act

The Court's initial inquiry in considering derivative jurisdiction is whether the Marion County Superior Court had jurisdiction over Mr. Ajabu's claims. State courts do not have jurisdiction to hear claims brought under the Federal Tort Claims Act ("FTCA") because district courts have exclusive jurisdiction to hear such claims. 28 U.S.C. § 1346(b)(1). Therefore, if the FTCA applies to Mr. Ajabu's claims, the Marion County Superior Court lacked jurisdiction to hear them.

In her Motion to Dismiss, Ms. Harvey discusses the FTCA and contends that "the context in which the complaint arises . . . makes clear that the complaint arises from alleged actions by Ms. Harvey within the scope of her federal employment," and therefore, the alleged torts must be resolved pursuant to the FTCA. [Filing No. 5 at 12.]

In his Motion to Remand, Mr. Ajabu contends that the FTCA does not apply because when Ms. Harvey touched him, she acted "outside the scope of her employment" with Representative Carson. [Filing No. 7 at 2-3.] He further argues that "Ms. Harvey made it clear that this was a personal matter when she requested a personal protective order against Mr. Ajabu." [Filing No. 7 at 3.]

4

In her response brief, Ms. Harvey argues that Mr. Ajabu confirmed the official nature of Ms. Harvey's actions in his Motion to Correct Error, [Filing No. 1-2], and "that all interactions" between Mr. Ajabu and Ms. Harvey, "including those on December 19, 2017, were causally connected to and derived from her duties as Representative Carson's official representative to the veterans' community." [Filing No. 8 at 8.] In addition, Ms. Harvey notes that the official nature of her interactions with Mr. Ajabu is underscored by her testifying at the protective order hearing that she was seeking a workplace protective order. [Filing No. 8 at 8-9.] Finally, Ms. Harvey argues she was acting within the scope of her employment under Indiana law. [Filing No. 8 at 9.]

"Scope of employment for purposes of the FTCA is determined by reference to the *respondeat superior* law of the state in which the alleged wrongful conduct occurred." *O'Vadka v. Blum*, 2007 WL 1550429, at *3-4 (N.D. Ind. May 24, 2007) (citation omitted). Therefore, to determine whether Ms. Harvey was acting within the scope of her employment, the Court must "look to Indiana law on principles of *respondeat superior*." *U.S. ex rel. Durcholz v. FKW Inc.*, 997 F. Supp. 1143, 1150 (S.D. Ind. 1998). The Indiana Supreme Court has held that *respondeat superior* "imposes liability, where none would otherwise exist, on an employer for the wrongful acts of his employee which are committed within the scope of employment." *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989). In a subsequent case, the Indiana Supreme Court explained the nuances of what constitutes actions within the "scope of employment" as follows:

> The critical inquiry is not whether an employee violates [her] employer's rules, but whether the employee is in the service of the employer. Even though an employee violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions, an employer may be held accountable for the wrongful act if the employee was acting within the scope of employment. Acts done on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed are not in the service of the employer and are thus outside the scope of employment. However, an employee's wrongful act may

5

still fall within the scope of [her] employment if [her] purpose was, to an appreciable extent, to further [her] employer's business, even if the act was predominantly motivated by an intention to benefit the employee [herself] or if the employee's act originated in activities so closely associated with the employment relationship as to fall within its scope.

*Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997) (citations and quotations omitted). "In sum, an employer is liable under *respondeat superior*: 1) if an employee's act furthered the employer's business interest to an appreciable extent, or 2) if an employee's authorized acts and unauthorized acts are so closely associated that the employee can be said to have acted within the scope of [her] employment." *O'Vadka*, 2007 WL 1550429, at *3-4 (citations omitted).

Applying these principles to the case at hand, Ms. Harvey's actions were clearly within the scope of her employment as a staff member in Representative Carson's office. In fact, documents related to the protective order Ms. Harvey sought and received against Mr. Ajabu – including documents drafted by Mr. Ajabu himself – support a finding that Ms. Harvey acted within the scope of her employment. At the hearing for a protective order, when Ms. Havey was asked how she knew Mr. Ajabu, she replied "I serve as the Veteran's caseworker for Congressman Carson and I run into him at various events and sometimes he has come to our office as well." [Filing No. 1-2 at 20.] Contrary to Mr. Ajabu's contention that she sought a personal protective order, Ms. Harvey stated during the hearing that she was seeking a "workplace" protective order.[2] [Filing No. 1-2 at 20.] In his Motion to Correct Error, filed in Marion Superior Court, Mr. Ajabu stated that he "never personally sought out [Ms.] Harvey in order to communicate with her pertaining to

---

[2] At the hearing for a protective order, the Judge noted that "this one's under a personal [protective order]," but then stated that she could include Ms. Harvey's workplace so that she would not have to redo the paperwork. [Filing No. 1-2 at 20.] Given Ms. Harvey's testimony during the hearing that she was seeking a "workplace" protective order, Mr. Ajabu's argument that she sought the protective order in her personal capacity is unavailing.

6

anything that did not involve matters regarding Andre Carson or constituent services." [Filing No. 1-2 at 3.] During one such conversation – the same conversation at issue in this case – Mr. Ajabu stated that Ms. Harvey "placed her hand on" him. [Filing No. 1-2 at 3.] By his own admission, Mr. Ajabu's interactions with Ms. Harvey that gave rise to this suit involved her employment with Representative Carson and concerned constituent services.

Mr. Ajabu's argument that this case is analogous to *Barnett v. Clark*, 889 N.E.2d 281 (Ind. 2008), is a non-starter. In *Barnett*, the Indiana Supreme Court held that the "alleged acts of confining, sexually touching, and raping the plaintiff were not an extension of authorized physical contact" because such acts "were not incidental to nor sufficiently associated with . . . authorized duties," did not further the employer's business, and "were not motivated to any extent" by the employer's interests. *Id*. at 286. *Barnett* is distinguishable from this case. Aside from the vastly different allegations at issue in *Barnett*, which involved "conduct constituting rape, sexual battery, and false imprisonment," *id*. at 282, each of the factors the Indiana Supreme Court highlighted in *Barnett* weigh in favor of finding that Ms. Harvey acted within the scope of her employment. Ms. Harvey was attending a meeting that was associated with her employment with Representative Carson, her interactions with constituents of Representative Carson can be fairly said to further her employer's interests, and Ms. Harvey's interactions with constituents fit within the scope of her employment as a caseworker who conducts such interactions on behalf of Representative Carson. As such, Ms. Harvey was acting within the scope of her employment, and therefore the FTCA governs the claims brought by Mr. Ajabu. In turn, because the FTCA applies to Mr. Ajabu's claims, the Marion County Superior Court lacked jurisdiction to hear them.

### B. Derivative Jurisdiction

Given that the Marion County Superior Court lacked jurisdiction to hear Mr. Ajabu's claims, the Court must next determine whether derivative jurisdiction prevents this Court from acquiring jurisdiction. For this inquiry, the Court turns to *Rodas v. Seidlin*, the Seventh Circuit's detailed and widely-cited case concerning derivative jurisdiction. 656 F.3d 610 (7th Cir. 2011). The *Rodas* court noted that the doctrine of derivative jurisdiction "has been criticized a great deal over the course of many years," has an "improvident name," does "not fit cleanly into . . . classifications," and is "difficult to explain." *Id*. at 619-21. Nonetheless, *Rodas*' initial conclusion is simple enough – derivative jurisdiction applies to removals under § 1442. *Id*. at 619.

However, the Seventh Circuit's more nuanced discussion concerned the issue of whether derivative jurisdiction "constitutes a mere defect in the process by which a case reaches federal court," or whether it "creates a latent and persistent defect in the subject matter jurisdiction of federal courts." *Id*. at 621. In other words, *Rodas* asked whether "the doctrine of derivative jurisdiction is essential to a court's subject matter jurisdiction such that it *cannot* be cured." *Id*. at 621 (emphasis in original).

After examining the issue, the Seventh Circuit rejected "the argument that the doctrine of derivative jurisdiction constitutes an essential ingredient of federal subject matter jurisdiction over removed actions." *Id*. at 622. Specifically, the "Courts of Appeals should disregard procedural defects in the removal process . . . so long as subject matter jurisdiction properly lies at the time the order of judgment under review was entered." *Id*. at 623. The Seventh Circuit concluded "that because the district court would have had jurisdiction over a hypothetical complaint filed at the time it entered the judgment now under review, the fact that the state court lacked jurisdiction over the case when it was removed has no significance." *Id*. at 625. *Rodas* instructed that on remand,

8

"considerations of finality, efficiency, and economy warrant the continued exercise of jurisdiction over this case." *Id.* at 629 (citation and quotation omitted).

Numerous courts have subsequently found that *Rodas* provides an exception that only applies where a district court has already made a decision on the merits. In *Pelto v. Office of Regional Chief Counsel*, for example, the Western District of Wisconsin found that *Rodas* recognized a limited exception to derivative jurisdiction "where the motion to dismiss is made after removal, but only in the context of a case where the dispute has proceeded to a disposition on the merits." 2013 WL 5295678, at *3 (W.D. Wis. Sept. 19, 2013) (citing *Rodas,* 656 F.3d at 619-25). Applied to the facts in *Pelto*, the court found that the "*Rodas* exception does not appear to apply in this case where no substantive matters have as yet been addressed, much less resolved on the merits" and that as a result, the derivative jurisdiction doctrine prevented the court from acquiring jurisdiction subsequent to removal. *Id.* at *3. However, the court arrived at this result with a fair amount of apprehension – it characterized derivative jurisdiction as a "jurisdictional oddity," noted that it found the outcome in the case "[b]ewildering," and stated that "[t]empting though it may be to extend the reasoning of *Rodas* to the circumstances here, this slow creep against the doctrine is for the federal courts of appeals to make, not this court." *Id.* at *3. As a result, the court dismissed the claim for lack of jurisdiction. *Id.* at *3.

The Northern District of Illinois followed suit two years later, but here again, the court hedged slightly when restating the holding from *Rodas*. The court noted that "[a]lthough it is not clear that dismissal is strictly required whenever the derivative jurisdiction doctrine applies, dismissal is strongly indicated when the issue is raised before any substantive matters have been

addressed." *Abu-Humos v. First Merit Bank*, 2015 WL 7710374, at *1 (N.D. Ill. Nov. 30, 2015) (citing *Rodas*, 656 F.3d at 619).

The Northern District of Indiana has been far less equivocal in describing the *Rodas* holding. Four cases decided in 2017 all cite *Rodas* for essentially the same proposition, stating that "*Rodas* recognized a limited exception for the derivative jurisdiction rule for removals under section 1442 where a motion to dismiss is made after removal, but only where the case has already been decided on the merits." *Brown v. Hosp. "A"*, 2017 WL 5989717, at *2 (N.D. Ind. Dec. 4, 2017) (Lozano, J.) (citing *Rodas*, 656 F.3d at 619-25); *Paige v. Colgate*, 2017 WL 2778402, at *2 (N.D. Ind. June 27, 2017) (Springmann, C.J.) (same); *Axson v. Ortiz*, 2017 WL 2181232, at *2 (N.D. Ind. May 18, 2017) (same); *Axson v. Reynolds*, 2017 WL 495694, at *2 (N.D. Ind. Feb. 7, 2017) (same).

While acknowledging that the weight of authority in this circuit supports a finding that *Rodas'* holding is limited to circumstances where a final decision on the merits already exists, the

Court notes that *Rodas* lacks a clear and direct articulation of such a holding.[3] However, even if its holding were more broad, the principles discussed in *Rodas* – namely "finality, efficiency, and economy," 656 F.3d at 629 – do not weigh in favor of this court exercising jurisdiction over this matter. Unlike *Rodas*, there has been no final decision on the merits in this case, and the case was removed to this Court just over three months ago. As such, dismissal of the case does not compromise finality, and, although some substantive matters have been raised by the parties in their briefs, none have been addressed by the Court, so considerations of efficiency and economy are relatively minor.

Accordingly, the Court finds that under the doctrine of derivative jurisdiction, dismissal without prejudice is the proper result. Mr. Ajabu should be mindful that Ms. Harvey's Motion to

---

[3] Many of the opinions discussed herein cite to seven full pages of *Rodas* for the proposition that the case's holding is limited to circumstances where a final decision on the merits already exists. *See, e.g.*, *Pelto*, 2013 WL 5295678, at *3 (citing *Rodas*, 656 F.3d at 619-25); *Brown*, 2017 WL 5989717, at *2 (same). It is the opinion of this Court that the most succinct enunciation of the *Rodas* exception is as follows:
> The foregoing analysis demonstrates that the doctrine of derivative jurisdiction, notwithstanding its perhaps improvident name, is a procedural bar to the exercise of federal judicial power. It is not an essential ingredient for a court's subject matter jurisdiction. Therefore the principles of *Grubbs* apply. Unfortunately, the government's brief did not wrestle with the questions we have considered, instead merely asserting that *Grubbs* does not apply to jurisdictional defects. That presumably is why the government did not inform us that circuits appear to be unanimous in holding that the doctrine of derivative jurisdiction is cabined by the principles announced in *Grubbs*.

*Rodas*, 656 F.3d at 625.

*Grubbs*, in turn, holds that:
> Longstanding decisions of this Court make clear . . . that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972). Therefore, to the extent that *Rodas* recognizes that "derivative jurisdiction is cabined by the principles announced in *Grubbs*," Rodas' holding is limited only to situations where a district court has made a final decision on the merits.

Dismiss, though granted on grounds other than those set forth in her brief, nonetheless raised serious issues involving the failure to exhaust administrative remedies, sovereign immunity, and the failure to meet pleading standards. Any subsequent complaint should be filed under a new case number and should state a valid cause of action, satisfy any exhaustion requirements, and contain "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a).

## III.
### CONCLUSION

For the reasons stated herein, Ms. Harvey's Motion to Dismiss is **GRANTED** without prejudice, [4], and Mr. Ajabu's Motion to Remand is **DENIED** as moot, [7]. Judgment dismissing this action without prejudice will issue.

Date: 7/26/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

MMOJA AJABU
P.O. Box 2696
Indianapolis, IN 46206

Todd B. Tatelman
OFFICE OF GENERAL COUNSEL
todd.tatelman@mail.house.gov